**STATE of Minnesota, Respondent,**

· v.

**Phillip John COLLARD, Appellant.**

No. C9-87-957.

Court of Appeals of Minnesota.

Nov. 3, 1987.

Review Denied Jan. 15, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., Vernon D. Swanum, Asst. Co. Atty., Duluth, for respondent.

C. Paul Jones, State Public Defender, Marie L. Wolf, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by WOZNIAK, P.J., and FOLEY and CRIPPEN, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

This appeal is from an order denying postconviction relief. Following a trial, appellant was found guilty of possession with intent to sell cocaine and sentenced to 21 months in prison, with a stay of execution that was later revoked. We affirm.

## FACTS

Appellant Phillip Collard was arrested in the early morning hours of July 3, 1985 after a Duluth patrol officer witnessed Collard driving in excess of the speed limit. Officer Renier followed Collard, clocking his speed on his speedometer at nearly 45 mph in a 30 mph zone. The car pulled over to the curb and stopped. Renier stopped his squad car behind the vehicle, without activating his emergency lights.

Collard got out of his car and Officer Renier walked up to him, intending to talk with him about his speeding. Renier noticed the license plate tabs on the vehicle had expired. He questioned Collard about his ownership of the car and ran a license check, which showed ownership in another name. Collard said he was buying the car from a friend who had bought it from the registered owner.

Walking alongside the car and shining a flashlight inside, Renier saw a beer bottle on the floor of the car just in front of the driver's seat. The bottle was nearly upright, leaning against the seat. Renier testified there was about a mouthful of liquid in the bottle. Renier also claimed the contents smelled like beer. Renier asked Collard if there were any more open bottles,

and Collard replied, "only dead ones," i.e., empty bottles.

When a backup unit arrived, Renier returned to the Collard car to search for more open beer bottles. Renier testified:

I went back to the vehicle, I was going to search for more open bottles. I looked under the driver's bucket seat, where I saw a plastic container, which I noticed inside of it was a baggie of what I thought to be marijuana. Also I saw a small red booklet with the container.

Renier testified that the cover had been removed from the Tupperware container. In addition to the baggie and the red booklet, later found to contain addresses, Renier found a large wad of money ($2,000), three small packets later found to contain cocaine, and empty paper packets.

Collard's defense at trial was that the cocaine was purchased for his personal use and the money belonged to his girlfriend, Sarah Isham, with whom he was staying at the time. Sarah Isham testified the money, a total of $2,300 in cash, was from a student loan, and that she had put it in her room in a Tupperware container. She identified the container seized as hers. Isham, who was on AFDC, claimed she had reported the student loan to welfare authorities over the telephone. The state introduced the rebuttal testimony of Isham's social worker, stating she had not reported the loan. The social worker conceded the loan would not have affected Isham's AFDC grant.

Collard testified he had taken Isham's money without her permission following a fight in which she asked him to leave for a few days. He stated that he intended to use the money to purchase drugs.

The state presented the expert testimony of Patrick Alexander, a Duluth police officer in the narcotics unit. Alexander was allowed to testify, over defense objection, that the quantity of cocaine seized from Collard's car indicated an intent to sell rather than to retain for personal use. Noting that persons found with a gram or less are not charged with possession with intent to sell, Alexander testified:

It would vary depending on whether it was—well, how it was packaged, but the cocaine is expensive and someone in possession of, say, 5 grams has got at least $500 investment so it would indicate to me that it's more than what the individual for his own use would have.

On cross-examination, Alexander conceded a heavy user could go through 5 grams in a week.

Alexander also testified concerning the address book found in the container, noting that although there were no recordkeeping entries in the address book, there were entries on the back of a lumber yard receipt which were consistent with drug sales. Alexander testified a number of names in the booklet were familiar to him as drug dealers or users.

The trial court found Collard guilty of the charge of possession with intent to sell.

## ISSUES

1. Was the search of appellant's car supported by probable cause?

2. Did the trial court abuse its discretion in allowing an expert witness to testify on intent to sell?

3. Was the evidence sufficient to support the conviction?

## ANALYSIS

1. Collard contends that the beer bottle was not immediately apparent evidence of a crime as required under the plain view exception to the warrant requirement. *See State v. Streitz*, 258 N.W.2d 768, 772 (Minn.1977) (officer must also be justified in the intrusion that produced the view and the discovery must be inadvertent).

 Collard points out there were no signs that he had been drinking, no odor of alcohol coming from the car, and no other suspicious behavior. The beer bottle, however, pointed directly to a violation of the open bottle law, which does not require that the driver be intoxicated or have consumed anything from the bottle. Minn. Stat. § 169.122, subd. 3 (1984). The beer bottle was standing in a nearly upright position, in which it was possible any con-

tents would be retained in the bottle. The bottle was no longer sealed. It was immediately apparent as possible evidence of a violation of the open bottle law.

■ Collard contends that after seizing the bottle, the officer did not have probable cause to conduct a full search of the car. This· court has held, however, that upon observing evidence in plain view, a warrantless search of the remainder of the passenger compartment is justified. *State v. Munoz*, 385 N.W.2d 373, 376 (Minn.Ct. App.1986) (officer observing glassine envelopes in plain view could search other areas of the car that were likely to contain similar evidence). We find the search of Collard's car was supported by probable cause.

2. Collard contends Alexander's testimony on the usual amounts of cocaine retained for personal possession went directly to the issue of his intent to sell the substances seized, and should not have been admitted.

■ A primary consideration in determining whether the defendant has the required intent to sell a controlled substance is the quantity of the substance seized. *State v. White*, 332 N.W.2d 910, 912 (Minn. 1983). An expert witness may give testimony on the ultimate issue which the factfinder must decide. *State v. Langley*, 354 N.W.2d 389, 401 (Minn.1984); Minn.R.Evid. 704. However, opinions involving a legal analysis or mixed questions of fact and law generally are of no assistance to the factfinder. *State v. Saldana*, 324 N.W.2d 227, 230 (Minn.1982). The primary criterion for admissibility is whether the opinion testimony would be helpful to the finder of fact. *Id.*

■ Alexander's testimony on the usual quantities possessed for personal use related to the facts of cocaine use which a court or jury might not be able to evaluate without the assistance of expert testimony. The testimony was not expressed as a legal conclusion or in otherwise conclusive terms. *Cf. State v. Ogg*, 243 N.W.2d 620, 621 (Iowa 1976) (expert opinion that number of LSD tablets found "far exceeds

what one might possess for personal use" was admitted erroneously). Collard personally argues Alexander contradicted himself when he testified a heavy user could use five grams in a week. However, this concession primarily affected the weight to be given Alexander's testimony, and only could favor its admissibility.

Factors other than quantity possessed bear on the determination of intent to sell. *See White*, 332 N.W.2d at 912 (evidence on intent includes manner of packaging and other evidence in addition to quantity). The BCA lab report showed two of the three packets of cocaine were of slightly different purity. The third packet, very small in quantity, was uncut. Collard contends the different purity levels show he purchased the packets, rather than assembled them for sale. The purity levels, however, were not that different and the trial court could have found the large sum of money, as well as the address book and notations, demonstrated a selling operation.

The trial court did not abuse its discretion in admitting Alexander's expert testimony, which did not invade the court's function as finder of fact. We also note that the court was in a better position than a jury to separate any legal conclusions offered by an expert witness.

■ 3. Collard contends the evidence was insufficient to establish possession with intent to sell. This court, however, must assume the factfinder believed the testimony supporting the verdict and discredited any contrary evidence. *State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981). The fact that Collard offered a plausible alternative explanation of what occurred did not compel the court to accept the explanation. *State v. Larson*, 393 N.W.2d 238, 241–42 (Minn.Ct.App.1986).

The amount of cocaine and money seized, the address book and records found, and the packaging of the cocaine, along with the expert testimony, provided sufficient evidence to support a finding of intent to sell. *See White*, 332 N.W.2d at 912.

Collard personally argues the inferences to be drawn from the characteristics of the

cocaine to be seized. These factual inferences were for the court's initial determination as factfinder and we find no basis to disturb the verdict. If the factfinder, acting with due regard for the presumption of innocence, could reasonably find the appellant guilty, the verdict will not be disturbed. *State v. Murphy*, 380 N.W.2d 766, 771 (Minn.1986). Collard's claim that he was denied additional requested testing of the cocaine was not raised in the postconviction petition and is not indicated in the record.

## DECISION

The trial court did not err in admitting evidence seized following the search of appellant's car. The court did not abuse its discretion in permitting expert testimony bearing on intent to sell. The evidence was sufficient to support the finding of possession with intent to sell.

Affirmed.